[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 23, 2012
JOHN LEY
CLERK

No. 11-12771
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cr-60311-DMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALBERT ANTHONY ANDRULONIS,

Defendant-Appellant.

_____

No. 11-12939
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cr-60311-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY LEE THEODORE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(February 23, 2012)

Before DUBINA, Chief Judge, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Appellants Albert Anthony Andrulonis and Jimmy Lee Theodore appeal their 132-month and 175-month total sentences, respectively. They both pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, one count of unauthorized use of a debit card, in violation of 18 U.S.C. § 1029(a)(2), and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

On appeal, Andrulonis first challenges the imposition of a sentence enhancement for causing a loss between $400,000 and $1,000,000. He argues that the losses from Chase Bank caused by Theodore cannot be attributed to him, the expenses from Holy Cross Hospital cannot be attributed to him, and the expenses from Holy Cross Hospital were not reasonably foreseeable. Andrulonis next argues that the district court incorrectly applied a sophisticated means

enhancement to his guideline range because he was involved in a run-of-the-mill fraud scheme that involved no special planning or attempt at concealment. Finally, Andrulonis argues that the district court incorrectly calculated the number of victims, because it included victims who were not connected to Andrulonis or did not sustain any actual loss.

Theodore, in turn, argues that various sentencing enhancements were incorrectly included in his guideline range, and that his sentence is substantively unreasonable. However, Theodore signed an appeal waiver that the government urges us to enforce before reaching the merits of his claims.

I.

Andrulonis first challenges the district court's determination that the amount of loss was between $400,000 and $1,000,000.

"The district court's determination of loss is reviewed for clear error." *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011), *cert. denied*, --- S. Ct. ----, (No. 11-7635) (Jan. 09, 2012). A district court's interpretation of the sentencing guidelines is reviewed *de novo*. *Id.* A failure to object to the factual allegations in the PSI with specificity and clarity will be deemed an admission by the defendant. *United States v. Bennett*, 472 F.3d 825, 833-34 (11th Cir. 2006).

Loss is the greater of the actual loss or intended loss. U.S.S.G. § 2B1.1

comment. (n. 3(A)).  Actual loss is the reasonably foreseeable pecuniary harm that resulted from the offense.  U.S.S.G. § 2B1.1 comment. (n. 3(A)(i)).  Intended loss is the pecuniary harm that was intended to result from the offense, even if the harm was impossible or unlikely to occur.  U.S.S.G. § 2B1.1 comment. (n. 3(A)(ii)).  Pecuniary harm is a harm that is readily measurable in money, and does not include things such as emotional distress and harm to reputation.  U.S.S.G. § 2B1.1 comment. (n. 3(A)(iii)).  A reasonably foreseeable pecuniary harm is one that the defendant knew or reasonably should have known was a potential result of the offense.  U.S.S.G. § 2B1.1 comment. (n. 3(A)(iv)).  Interest, finance charges, late fees, penalties, and other similar costs are specifically excluded from a loss calculation.  U.S.S.G. § 2B1.1 comment. (n. 3(D)(I)).

The government must support its loss calculation with reliable and specific evidence; however, a sentencing court does not need to make a precise determination of loss, but only a reasonable estimate given the available information.  *Barrington*, 648 F.3d at 1197.

A participant in a conspiracy may be held responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy.  *United States v. Mateos*, 623 F.3d 1350, 1370 (11th Cir. 2010), *cert. denied*, *Alrarez v. United States*, l131 S. Ct. 1540 (2011); *see also* U.S.S.G. §

4

1B1.3(a)(1)(B) (stating that, in the case of jointly undertaken criminal activity, all reasonably foreseeable acts and omissions of others in furtherance of the criminal activity can count towards offense characteristics). A court must first make individualized findings concerning the scope of the defendant's criminal activity, and then may consider all reasonably foreseeable acts of others in the jointly undertaken criminal activity. *Id.* A failure to make such individualized findings does not require us to vacate a sentence if the record supports the district court's offense conduct determination. *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002).

While the district court did not make an individualized finding attributing the activities of Andrulonis's co-defendants to him, the record is more than sufficient to support the district court's determinations. Andrulonis, Theodore, and the other conspirators worked closely to carry out their identity theft scheme. Stealing patient information from Holy Cross Hospital was a reasonably foreseeable act of that scheme in furtherance of the conspiracy, as was using the stolen information to cause losses to various Chase Bank accounts. Accordingly, we conclude that the activities of the conspiracy, and the losses sustained by Holy Cross Hospital and Chase Bank, were properly attributed to Andrulonis during sentencing.

Finally, given the offense conduct before us, we conclude that the expenses incurred by Holy Cross Hospital were reasonably foreseeable. Accordingly, we hold that the district court correctly arrived at the loss amount and the associated guideline enhancement.

## II.

Andrulonis's second challenge is to the sophisticated means enhancement applied by the district court.

We review a district court's finding that sophisticated means were used for clear error. *Barrington*, 648 F.3d at 1199. The sophisticated means enhancement is appropriate for especially complex or especially intricate offense conduct, during either execution or concealment of the conduct. U.S.S.G. § 2B1.1 comment. (n. 8(B)). Only the totality of the scheme needs to be sophisticated, not each individual action. *Barrington*, 648 F.3d at 1199. Repetitive and coordinated activities by numerous individuals using sophisticated technology can justify a sophisticated means enhancement. *See United States v. Ghertler*, 605 F.3d 1256, 1267-68 (11th Cir. 2010).

In *Ghertler*, we stated that the defendant qualified for a sophisticated means enhancement because he conducted extensive research to develop inside information to facilitate a scheme to defraud; used unwitting couriers to pick up

6

and deliver proceeds of his frauds to conceal the scheme; forged false company documents and internal numbers; and used unwitting third parties, despite other times making little or no effort to conceal his identity or fraud. *Id.* Similarly, in *United States v. Campbell*, 491 F.3d 1306 (11th Cir. 2007), we held that a sophisticated means enhancement was appropriate because the defendant used campaign accounts and credit cards issued to other people to conceal cash expenditures and cover his tax fraud. *Id.* at 1315.

We conclude from the record that Andrulonis and Theodore developed a sophisticated scheme to steal identities and fraudulently obtain money. They hired three employees in the healthcare field to feed them confidential patient data. They combined that data with publicly available information that was sufficient to defeat Chase Bank's security measures. They created new accounts in the victims' names prior to transferring and withdrawing any money, to avoid detection. The district court found it likely that they were also working with an insider at Chase Bank. They attempted to hide their calls into Chase Bank by making their phone numbers private. They frequently accessed the Chase Bank website from a public, rather than a personal, computer. Accordingly, we conclude from the record that the district court did not clearly err in determining that this offense conduct was committed through sophisticated means.

III.

Finally, Andrulonis challenges the district court's determination that more than 250 victims were involved in his offense conduct.

We review the factual findings for number of victims for clear error. *See United States v. Lee*, 427 F.3d 881, 892 (11th Cir. 2005). We have stated that, if a defendant does not object to a fact contained in the prosecution's factual recitation during a plea colloquy, that fact is deemed admitted. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (holding that there was no error when a defendant admitted to part of his drug quantity enhancement during a plea colloquy, part during sentencing, and made no objections to the PSI).

The government stated during the factual proffer at the Rule 11 hearing that there were 310 individual victims. Andrulonis agreed to the factual proffer without objection. Accordingly, Andrulonis is bound by the government's factual proffer. Since the proffer included 310 victims, we conclude that the district court did not clearly err in determining that there were more than 250 victims and applying the appropriate guideline enhancement.

IV.

We review the validity of a sentence appeal waiver *de novo*. *United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993). We enforce a sentence appeal

waiver if the government shows either "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id.* at 1351. Where an appeal waiver is specifically discussed during the Rule 11 colloquy, we have consistently enforced them, according to their terms, when the district court specifically questioned the defendant during the plea colloquy about the appeal waiver, adequately explained the significance of the appeal waiver, and confirmed that the defendant understood the full significance of the appeal waiver. *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005).

The record demonstrates that Theodore's appeal waiver was specifically discussed during the Rule 11 colloquy. The district court informed Theodore that he was giving up his right to appeal his sentence unless it exceeded the statutory maximum or the guideline range and confirmed his understanding of the waiver. The district court specifically found that the waiver was knowing and voluntary. Moreover, per the terms of the appeal waiver, Theodore can only appeal his sentence if it was in excess of the statutory maximum, the result of an upward departure or variance, or if the government appealed the sentence. The district court imposed a low-end guideline sentence within the statutory maximum. The

government did not appeal the sentence. Thus, Theodore cannot challenge his sentence on appeal. Because Theodore only raises sentencing issues on appeal, we dismiss his appeal as barred by the appeal waiver without proceeding to the merits.

**DISMISSED IN PART; AFFIRMED IN PART.**