[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10007
Non-Argument Calendar
_____

Agency No. A206-799-106

JIE ZHU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 27, 2016)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Jie Zhu is a native and citizen of the People's Republic of China ("China") who claims that he will suffer persecution for his Christian faith if he is sent back. An immigration judge ("IJ") ordered Zhu's removal to China after finding that he abandoned his application for asylum by failing to file it on time. The Board of Immigration Appeals ("BIA") affirmed the IJ's finding of abandonment and denied Zhu's motion to remand the case for consideration of his then-completed asylum application. Zhu petitions this Court for review, arguing that he was denied a full and fair opportunity to present his claim for relief from removal and that he did not willfully abandon his asylum application. He contends that he should have been given more time to present his case because he was uninformed, did not understand that he had to submit an application, could not find anyone to assist him, did not speak English, and was not given a realistic opportunity to have an attorney represent him. After careful review, we deny the petition for review.

## I.

Zhu entered the United States without authorization on June 8, 2014. One month later, Zhu was served with a Notice to Appear, charging him as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for being an immigrant who, at the time of application for admission, was not authorized to enter the United States.

Zhu appeared five times before an IJ in connection with his removal proceeding. At each hearing, the IJ telephonically obtained a Mandarin interpreter

for Zhu.  At no point did Zhu express that he was unable to understand the interpreter.  At all times, Zhu was detained at a facility in Lumpkin, Georgia.

In total, the IJ continued Zhu's case three times to allow him to obtain representation.  Zhu first appeared before an IJ on July 23, 2014, and asked for time to talk to an attorney.  At the second hearing (July 30), Zhu stated he had obtained an attorney, but the attorney did not make an appearance.  At the third hearing (August 14), Zhu again appeared without an attorney.  The IJ warned Zhu that he would have one last setting for his attorney to appear on Zhu's behalf, and that if his attorney did not do so, the IJ would "start working on [Zhu's] case." (Administrative Record (AR) at 111).  When no attorney made an appearance at Zhu's fourth hearing (August 20), the IJ proceeded to question Zhu under oath and, based on his responses, found him removable to China for entering the United States without authorization.

After finding Zhu removable, the IJ questioned Zhu to determine if he was eligible for any relief from removal.  Zhu responded that he was afraid to return to China because he had been beaten for practicing Christianity and that was why he left.  The IJ gave Zhu an application for asylum and directed him to go to "Catholic Charity," an organization that, according to the IJ, was in the detention facility several times a week and could help Zhu to fill out the application.  Zhu indicated that he understood.

3

The IJ informed Zhu that he would come back for a hearing on September 3, and that "the Court wants to see if that application has been filled out" at that time. (AR at 120). The IJ further stated that there would be "no more delay," and that if the asylum papers "are not filled out we are going to send you back to China." (AR at 120-21). Zhu, through an interpreter, stated that he understood.

At the fifth and final hearing (September 3), Zhu did not have an attorney and had not filled out the asylum application. When the IJ told him he was supposed to file the asylum documents that day, Zhu responded that he did not know how to write or fill out the application. The IJ summarized the procedural history of the case, stating that Zhu had been told to take the application to Catholic Charity, which "would find you someone who spoke Mandarin to help you fill out your form." (AR at 124-25). Further, the IJ stated, "The Court also warned you about not filing your papers today. As you have not filed your paperwork today, the Court is ordering you to be returned to China." (AR at 125). Accordingly, the IJ ordered Zhu removed to China.

Following the final hearing on September 3, 2014, Zhu obtained counsel and appealed the IJ's decision to the BIA. The BIA received Zhu's appeal package on September 22, 2014. Zhu submitted a completed asylum application with his appeal and asked the BIA to remand his case to the IJ for consideration of the merits of his claims.

In his brief to the BIA, Zhu argued that the IJ should have given him additional time to file for relief because he was detained, did not have the benefit of counsel, did not understand the IJ's instructions, and did not intend to abandon his asylum application. Zhu also contended that the IJ denied him his due-process right to a full and fair hearing. On the merits of his claims, Zhu argued that he was likely to succeed if given the opportunity to present his case.

The BIA affirmed the IJ's decision, denied Zhu's motion for remand, and dismissed the appeal. The BIA upheld the IJ's finding of abandonment as follows:

> The regulations provide that the [IJ] may set and extent time limits for the filing of applications for relief. In this case, the [IJ] continued the respondent's case on four occasions to allow the respondent to apply for all forms of relief for which he was eligible. The [IJ] advised the respondent that she would consider any application for relief abandoned if not filed within the deadline. At the fifth and final hearing, the [IJ] ordered the respondent removed, because he did not submit an application for relief. According to regulations, if the application is not filed within the time set by the [IJ], the opportunity to file the application shall be deemed waived. Hence, we find no basis to remand this case for consideration of the respondent's asylum claim.

(AR at 7) (citations omitted). The BIA also rejected Zhu's argument that his due-process rights had been violated, finding that he had been given notice and an opportunity to obtain counsel for his removal proceeding and to file an asylum application.

Zhu timely petitioned this Court for review.

5

## II.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA adopted the IJ's finding of abandonment, so we review that decision as well. *See id.*

We review for an abuse of discretion an IJ's decision that an immigration application was abandoned as untimely under 8 C.F.R. § 1003.31(c). *See Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1276 (11th Cir. 2009) ("We conclude that the IJ's decision to exclude evidence offered for submission after a court-ordered filing deadline is discretionary."); *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1306 n.3 (11th Cir. 2009) (holding that an IJ did not abuse its discretion in refusing to admit evidence after a deadline imposed under 8 C.F.R. § 1003.31(c)). *Accord Taggar v. Holder*, 736 F.3d 886, 889 (9th Cir. 2013); *Moreta v. Holder*, 723 F.3d 31, 33-34 (1st Cir. 2013). We likewise review the BIA's denial of Zhu's motion to remand for an abuse of discretion. *Cf. Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008) (BIA's denial of motions to reconsider, reopen, or remand generally reviewed for abuse of discretion).

"Our review is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or

6

capricious." *Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1226 (11th Cir. 2008) (quoting *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1149 (11th Cir. 2005)).

We review *de novo* claims of due-process violations in removal proceedings. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).

## III.

Zhu contends that he was denied a realistic opportunity to present his claim for asylum, asserting that he was uninformed, did not speak English, did not understand that he had to submit the application, and was not given sufficient time to obtain representation or apply for relief.  He also argues that he was likely to succeed on the merits of his claims.

The Fifth Amendment entitles petitioners in removal proceedings to due process of law, which requires that petitioners "be given notice and an opportunity to be heard in their removal proceedings."  *Lapaix*, 605 F.3d at 1143; *see Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner") (quotation omitted).  To obtain relief based on a due-process violation, the petitioner must show both (1) a violation of due process and (2) substantial prejudice.  *Lapaix*, 605 F.3d at 1143.  To show substantial prejudice, the petitioner "must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different."  *Id.*

7

Federal regulations provide an IJ with administrative control over a removal hearing. *Tang*, 578 F.3d at 1276 (citing 8 C.F.R. § 1003.31(c)); *see Moreta*, 723 F.3d at 34 ("The regulations governing removal proceedings invest IJs with broad authority to impose deadlines for court filings. This authority reflects the government's strong interest in the orderly and expeditious management of immigration cases.") (internal quotation marks omitted). The regulations state that "[t]he Immigration Judge may set and extend time limits for the filing of applications and related documents and responses thereto, if any." 8 C.F.R. § 1003.31(c).

"If an application for relief is not filed by the deadline set by the IJ, that ground for relief is deemed waived." *Makir-Marwil v. U.S. Att'y Gen.*, 681 F.3d 1227, 1235 (11th Cir. 2012); 8 C.F.R. § 1003.31(c). The BIA has long held that applications for relief from removal "are properly denied as abandoned when the alien fails to timely file them." *Matter of R–R–*, 20 I. & N. Dec. 547, 549 (BIA 1992). And we have held that an alien "does not have a constitutionally protected liberty interest in the admission of evidence after the court-ordered deadline" and "cannot establish a due process violation based on the IJ's adverse decision" in that respect. *Tang*, 578 F.3d at 1276.

Based on the record before us, we cannot conclude that the IJ abused her considerable discretion in finding that Zhu abandoned his asylum application by

8

failing to take any action with respect to it by September 3.  *See Moreta*, 723 F.3d at 34.  Considered as a whole and in context, the IJ's statements adequately informed Zhu that he faced a deadline to file his asylum application by September 3.  When the IJ continued the hearing to September 3, she stressed that there would be no delay (after several previous delays) and that if Zhu did not fill out the asylum application, he would be sent back to China.  Zhu indicated that he understood, and he made no attempt to clarify what the IJ meant or to ask for additional time.  Then, when he appeared before the IJ at the September 3 hearing without having filled out the asylum application, Zhu did not indicate whether he had attempted to contact Catholic Charity or taken any steps to complete the asylum application.

Under these circumstances, we are unable to conclude that the IJ abused her discretion in finding that Zhu abandoned his claims for relief by failing to file his application within the court-ordered period.  *See Tang*, 578 F.3d at 1276.  *See, e.g.*, *United States v. Campbell*, 491 F.3d 1306, 1310 (11th Cir. 2007) ("In applying the abuse of discretion standard, we recognize that a district court has a range of choice[,] . . . and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make.") (internal quotation marks omitted).

Likewise, the BIA did not abuse its discretion in denying Zhu's motion to remand. We cannot say that the BIA's decision was "arbitrary or capricious," *see Montano Cisneros*, 514 F.3d at 1226, in light of the IJ's discretion to manage administrative deadlines in the cases before it and to decide, in its discretion, to deem abandoned an application not filed by a court-ordered deadline. *See Makir-Marwil*, 681 F.3d at 1235; *Tang*, 578 F.3d at 1276.

For similar reasons, Zhu has not shown that his due-process rights to a full and fair hearing were violated. Zhu did not have a constitutionally protected liberty interest in the admission of his application for asylum after the court-ordered deadline. *See Tang*, 578 F.3d at 1276. Furthermore, the IJ continued Zhu's removal hearing several times to give him the opportunity to obtain an attorney, and although he represented that he had found one, no attorney ever filed a notice of appearance. In addition, for reasons explained above, Zhu was given constitutionally adequate notice of his opportunity to file an asylum application and of his deadline to file. Under the circumstances, we are unable to conclude that Zhu was deprived of the "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Ali*, 529 F.3d at 490.

Accordingly, we deny the petition for review.

**PETITION DENIED.**

10